# EXHIBIT A

## SETTLEMENT AGREEMENT AND GLOBAL RELEASE

This Settlement Agreement and Release (the "Agreement") is made and entered into as of February __, 2018 by and between Dorothy Moniello ("Ms. Moniello" or "Debtor"), David Madelung (Dorothy Moniello and David Madelung are collectively the "Claimants"), and Sandman Law Group LLC ("Sandman") (Sandman may be referred to as the "Defendant") (Dorothy Moniello, David Madelung and Sandman are collectively the "Parties" and each may be referenced individually as a "Party"). In consideration of the mutual promises and covenants set forth herein, the Parties agree as follows:

1. <u>Recitals</u>. This Agreement is made with reference to the following facts:

   1.1 Prior to the events described herein Dorothy Moniello was the sole owner of real property located at 82-84 Lancraft Street, New Haven, Connecticut (the "Property") and resided in the property until the Eviction (as defined below). Mr. Madelung also resided the Property until the Eviction, but has never owned the Property.

   1.2 On June 6, 2014, Wells Fargo Bank, National Association, as Trustee for Securitized Asset Backed Receivables LLC Trust 2005-OP1, Mortgage Pass-Through Certificates, Series 2005-OP1 ("Wells Fargo"), filed a foreclosure action against the Debtor in state court. A judgment of strict foreclosure entered on August 3, 2015. On June 21 2016, Wells Fargo filed an amended certificate of foreclosure on the land records of the City of New Haven.

   1.3 On July 6, 2016, after Wells Fargo recorded its amended certificate of foreclosure, the Debtor filed a Chapter 13 Bankruptcy action, case no. 16-31067 in the United States Bankruptcy Court for the District of Connecticut (the "2016 Bankruptcy" and the "Court"). On July 29, 2016, Wells Fargo sold its interest in the Property to Shmuel Aizenberg. On September 1, 2016, Mr. Aizenberg transferred the Property to Super Zen, LLC ("Super Zen").

   1.4 Ocean Management, LLC ("Ocean") is duly authorized by Super Zen to act as its managing agent. Ocean has managed the Property since it was acquired by Mr. Aizenberg and Super Zen.

   1.5 On August 24, 2016, Ocean served a notice to quit on the occupants of the Property.

   1.6 On August 30, 2016, Wells Fargo moved for relief from the automatic stay in the 2016 Bankruptcy. Wells Fargo represented in the motion that it owned the Property. However, at that time, Wells Fargo no longer owned the Property; it had already been transferred to Mr. Aizenberg and Super Zen. The Court, *Nevins, J.*, granted Wells Fargo's motion for relief from stay on September 23, 2016. Ms. Moniello thereafter filed a motion to vacate the order lifting the stay on October 6, 2016. On November 16, 2016, the Court vacated its first order and entered a new order granting Wells Fargo relief from stay. In accordance with applicable rule, said relief became effective 14 days later on November 30, 2016.

1731730

1.7     On September 30, 2016, Sandman commenced a summary process action on behalf of Ocean captioned *Ocean Management, LLC v. John Doe, et al.*, Docket Number NHH-CV-16-6002743-S in the Judicial District of New Haven (the "Summary Process Action"). The Summary Process Action was filed against "John Doe and Jane Doe" because the identity of the occupants was unknown to Ocean and Sandman at the time the Summary Process Action was commenced. Ms. Moniello and Mr. Madelung appeared in the Summary Process Action on October 12, 2016 and filed answers and special defenses on October 17, 2016.

1.8     On December 6, 2016 a trial was held on the Summary Process Action in state court. The court rendered judgment in favor of Ocean, and Ms. Moniello filed an appeal.

1.9     The 2016 Bankruptcy was dismissed on January 6, 2017.

1.10    After the appeal of the judgment was dismissed, and Ms. Moniello had exhausted her appellate options, an eviction order was issued by the state court on September 6, 2017. State Marshal Mark Winik served the eviction on the Claimants on September 7, 2017. The eviction commenced on September 8, 2017 and proceeded on certain dates thereafter (the "Eviction").

1.11    On September 8, 2017, after the Eviction commenced, Ms. Moniello filed a second Chapter 13 Bankruptcy action, case no. 17-31385 (the "2017 Bankruptcy").

1.12    Ms. Moniello and Mr. Madelung have asserted claims against, inter alia, Ocean and Sandman in the Court arising from the 2016 Bankruptcy and 2017 Bankruptcy, seeking damages for issuance of the Notice to Quit, conduct occurring in or during the Summary Process Action and the Eviction and for alleged violations of the bankruptcy automatic stays during the 2016 Bankruptcy and 2017 Bankruptcy (the "Claims").

1.13    On December 19, 2017, the Claimants, Sandman and Ocean executed a Term Sheet in order to settle the Claims. The settlement terms were reported to the Bankruptcy Court at a hearing on December 19, 2017. A copy of the Term Sheet is attached as **Exhibit A** to this Agreement. The Term Sheet states in paragraph 17 that the Term Sheet "is subject to full documentation and execution by Settling Parties." This Agreement represents the "full documentation" and settlement agreement contemplated by the Term Sheet with respect to the Claimants and Sandman. This Agreement does not represent any settlement between the Claimants and Ocean.

1.14    The Claimants and the Defendant have agreed to settle the Claims, and have agreed to execute releases in favor of each other stemming from any conduct occurring in or during the Summary Process Action and the Eviction, including but not limited to any alleged violations of the bankruptcy automatic stay, as reflected in the following paragraphs.

1.15    In consideration of the promises, covenants and conditions contained in this Agreement, and for good and valuable consideration, the receipt and sufficiency of which are acknowledged, the Parties, intending to be legally bound, release each other Party as set forth in the following paragraphs.

2

1731730

2.  <u>Payment</u>.

No later than seven (7) days after the execution of this Agreement, the Defendant will cause to be made to the Claimants the following payment:

- Fifteen Thousand Dollars and 00/100 Cents ($15,000.00) for damages claimed by Ms. Moniello and Mr. Madelung against Sandman pertaining to the Summary Process Action and/or the Eviction, including but not limited to any alleged violations of the bankruptcy automatic stay.

This payment is referred to as the "Settlement Payment." The Settlement Payment constitutes Sandman's contribution to the Forty Six Thousand Dollars and 00/100 Cents ($46,000.00) payment stated in paragraph 12 of the Term sheet. Ocean shall be responsible for the remaining Thirty One Thousand Dollars and 00/100 Cents ($31,000.00), and Sandman shall have no responsibility for this amount.

The Settlement Payment shall be made payable to "Dorothy Moniello and David Madelung" and shall be delivered via hand delivery and/or federal express to Ms. Moniello and/or Mr. Madelung at P.O. Box 8672, New Haven, Connecticut 06531.

The Claimants expressly acknowledge that the Settlement Payment and the release described below are Sandman's only material obligations pursuant to this Agreement and/or the Term Sheet.

The Claimants agree to withdraw all claims against Sandman in the 2016 Bankruptcy and 2017 Bankruptcy, with prejudice, within three (3) days of receipt of the Settlement Payment as stated above.

3.  <u>Release</u>.

3.1  Ms. Moniello, for herself and, as applicable, her heirs, beneficiaries, executors, administrators, members, partners, employees, legal representatives, predecessors, successors, parents, subsidiaries, agents, and assigns, and anyone claiming for or through her, for and in consideration of the Settlement Payment, lawful money of the United States of America paid by the Defendant pursuant to the terms of this Agreement, and for other good and valuable consideration as stated in this Agreement, agrees to release and forever discharge the Defendant and, as applicable, its present and former officers, directors, managers, members, employees, partners, trustees, consultants, successors, subsidiaries, parents, attorneys, affiliates, assigns, insurers and agents, and all persons acting by, through, under, or in concert with them from any and all claims, demands, damages, bills, judgments, actions, or causes of action, known or unknown, which Ms. Moniello ever had, now has or may have for, upon or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the date hereof regarding, relating, pertaining to or arising out of service of the Notice to Quit, the Summary Process Action, the Eviction, the Claims, or any alleged violations of the bankruptcy automatic stay in

the 2016 Bankruptcy or 2017 Bankruptcy. This Agreement and release shall not be construed to alter or affect any claims held or asserted or that may be asserted by Ms. Moniello against State Marshal Mark Winik or Attorney Michael Rozea.

      3.2     Mr. Madelung, for himself and, as applicable, his heirs, beneficiaries, executors, administrators, members, partners, employees, legal representatives, predecessors, successors, parents, subsidiaries, agents, and assigns, and anyone claiming for or through him, for and in consideration of the Settlement Payment, lawful money of the United States of America paid by the Defendant pursuant to the terms of this Agreement, and for other good and valuable consideration as stated in this Agreement, agrees to release and forever discharge the Defendant and, as applicable, its present and former officers, directors, managers, members, employees, partners, trustees, consultants, successors, subsidiaries, parents, attorneys, affiliates, assigns, insurers and agents, and all persons acting by, through, under, or in concert with them from any and all claims, demands, damages, bills, judgments, actions, or causes of action, known or unknown, which Mr. Madelung ever had, now has or may have for, upon or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the date hereof regarding, relating, pertaining to or arising out of service of the Notice to Quit, the Summary Process Action, the Eviction, the Claims, or any alleged violations of the bankruptcy automatic stay in the 2016 Bankruptcy or 2017 Bankruptcy. This Agreement and release shall not be construed to alter or affect any claims held or asserted or that may be asserted by Mr. Madelung against State Marshal Mark Winik or Attorney Michael Rozea.

      3.3     Sandman, for itself and, as applicable, its heirs, beneficiaries, executors, administrators, members, partners, employees, legal representatives, predecessors, successors, parents, subsidiaries, agents, and assigns, and anyone claiming for or through it, for and in consideration of the releases in paragraphs 3.1 and 3.2 of this Agreement, and other good and valuable consideration, the sufficiency of which is hereby acknowledged, agrees to release and forever discharge the Claimants and, as applicable, their present and former officers, directors, managers, members, employees, partners, trustees, consultants, successors, subsidiaries, parents, attorneys, affiliates, assigns, insurers and agents, and all persons acting by, through, under, or in concert with them from any and all claims, demands, damages, bills, judgments, actions, or causes of action, known or unknown, which Sandman ever had, now has or may have for, upon or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the date hereof regarding, relating, pertaining to or arising out of service of the Notice to Quit, the Summary Process Action, the Eviction, the Claims, any alleged violations of the bankruptcy automatic stay in the 2016 Bankruptcy or 2017 Bankruptcy or Sandman's contribution to the Settlement Payments. This Agreement and release shall not be construed to alter or affect any claims held or asserted or that may be asserted by Sandman against State Marshal Mark Winik, Ocean or Attorney Michael Rozea

      3.5     The foregoing releases shall extend to all claims specified therein of every nature and kind whatsoever, known or unknown, suspected or unsuspected, whether arising in equity or at law, including, but not limited to, any claims for fees or based on contract, tort, statute, breach of duty, negligence, recklessness, bad faith or any other theory of liability, common law or statutory.

3.6     The foregoing releases are intended to include in their effect all claims which the Parties do not know or suspect to exist in their favor at the time of the execution of this Agreement regarding, relating, pertaining to or arising out of the Summary Process Action, the Eviction, the Claims, any alleged violations of the bankruptcy automatic stay in the 2016 Bankruptcy or 2017 Bankruptcy or Sandman's or Ocean's contribution to the Settlement Payments, as well as all claims that were or could have been alleged or asserted in the 2016 Bankruptcy or 2017 Bankruptcy.

4.      Waiver of Automatic Stay

The automatic stay in connection with the Property is waived and shall be of no effect in any subsequent bankruptcy filing by Debtor or any bankruptcy filing in the future by Mr. Madelung.

5.      Non-Disparagement.

5.1     The Parties and their attorneys further agree and represent that no Party and no Party's representative shall disparage or defame any other Party or endeavor to publish or disseminate information regarding the other Parties regarding, relating, pertaining to or arising out of the Summary Process Action, the Eviction, the Claims or Sandman's contribution to the Settlement Payment.

6.      No Admission of Liability. The Claimants understand and acknowledge that this Agreement represents the settlement of doubtful and disputed claims against the Defendant in the 2016 Bankruptcy and 2017 Bankruptcy and the settlement of the Claims shall not be construed as an admission of liability or any fault on the part of the Defendant, which liability or fault is understood and acknowledged by the Claimants to be expressly denied by the Defendant.

7.      Representations, Warranties and Agreements.

7.1     Each Party has had the opportunity to receive independent legal advice from counsel with respect to the advisability of entering into the settlement reflected in the Term Sheet and this Agreement. Ms. Moniello and Mr. Madelung acknowledged and represented to the Court at the hearing on December 19, 2017, that they have conferred with attorneys and other persons regarding entering into and accepting the Term Sheet.

7.2     Each Party has made such investigation of the facts pertaining to the settlement reflected in this Agreement and of all the matters pertaining thereto as they deem necessary.

7.3     The Parties or their authorized representatives have read this Agreement, understand its terms, conditions and contents and are duly authorized both to execute this Agreement and to bind the Parties.

7.4     The Parties have not assigned, transferred, or granted, or purported to assign, transfer, or grant, any interest of any kind in the 2016 Bankruptcy, 2017 Bankruptcy or the

5

1731730

Claims, or in any of the claims, demands, or cause or causes of action disposed of by this Agreement.

8. <u>General Provisions</u>.

    8.1    <u>Integration</u>. This Agreement is intended to be and constitutes the final, complete and exclusive agreement regarding the subject matter of this Agreement and all prior or contemporaneous agreements, understandings, representations and statements, oral or written, are merged into and superseded by this Agreement. No parol or extrinsic evidence of any kind and no course of dealing or usage of trade or course of performance shall be used to vary, contradict, supplement or add to the terms of this Agreement.

    8.2    <u>Amendment</u>. No amendment, modification, termination or waiver of this Agreement or any of its provisions shall be valid unless it is in writing and signed by the Party against which such amendment, modification, termination or waiver is sought to be enforced.

    8.3    <u>Waiver</u>. No waiver of any breach of any provision or term of this Agreement shall be deemed a waiver of a breach of a similar or dissimilar provision or condition at the same time or any prior or subsequent time or of the provision or term itself.

    8.4    <u>Binding Effect</u>. This Agreement shall bind and inure to the benefit of the Parties and their respective successors, assigns and legal representatives. Except as otherwise stated in this Agreement, no person or entity other than the Parties shall have any rights under, or be deemed a beneficiary of, this Agreement.

    8.5    <u>Survival</u>. All representations, warranties, covenants and agreements contained in this Agreement shall survive its execution and delivery and any and all performance in accordance with this Agreement.

    8.6    <u>Governing Law</u>. This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Connecticut without regard or reference to choice of law provisions or rules.

    8.7    <u>Jurisdiction and Venue</u>. Any dispute relating in any way to this Agreement shall be litigated in the Bankruptcy Court, for as long as the Bankruptcy Court retains jurisdiction over the parties regarding this Agreement and the events giving rise thereto. If a dispute relating in any way to this Agreement arises after the Bankruptcy Court no longer has jurisdiction, said dispute shall be litigated in a state court located in Connecticut. The state housing court is recognized by the Parties as having concurrent jurisdiction respecting matters arising under the lease described herein.

    8.8    <u>Rules of Construction</u>. The section headings contained in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement. References to a section without further attribution shall refer to the section of this Agreement. When indicated by the context, each number, both singular and plural, includes all numbers, and

6

1731730

each gender includes all genders. As used herein, the terms "include," "including" and similar terms shall be construed as if followed by the words "without limitation;" the term "person" includes a natural person, firm, partnership, corporation, limited liability company, association and any other private or public entity; and the term "provisions" shall be construed as if followed by the words "covenants, agreements, representations, warranties, indemnities, terms and/or conditions."

8.9    Severability. If any one or more of the provisions of this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, then such invalidity, illegality or unenforceability shall not affect any other provisions of this Agreement and this Agreement shall be construed as if such invalid, illegal or unenforceable provisions had never been included in this Agreement.

8.10    Interpretation. This Agreement has been negotiated at arm's length. Any rule of law or legal decision that would require interpretation of this Agreement against the drafter is not applicable and is waived.

8.11    Attorneys' Fees. Each Party shall pay his, her or its own attorneys' fees, costs and related expenses incurred by them in connection with the 2016 Bankruptcy and 2017 Bankruptcy and with the negotiation, preparation, execution and delivery of this Agreement.

8.12    Effectiveness. This Agreement shall become effective when it has been executed by the Parties and delivered to the Parties' legal counsel. Facsimile and electronically stored, scanned signatures and delivery by facsimile or electronic mail transmission shall be valid and effective.

[Remainder of page intentionally left blank]

[Signature page to follow]

7

1731730

IN WITNESS WHEREOF, the Parties have executed this Agreement on the date indicated below.

Dated as of the 28 *Thursday* day of February 2018.

**DOROTHY MONIELLO**

By: *Dorothy Moniello*
Print Name: Dorothy Moniello

**DAVID MADELUNG**

By: *David Madelung*
Print Name: David Madelung

**SANDMAN LAW GROUP LLC**

By: *[signature]*
Print Name: Zev I. Sandman
Its: Member

1731730

8